\*NOT FOR PUBLICATION\*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JRJ HOSPITALITY, INC., KMK HOSPITALITY, INC., EIGHT REALTY, LLC, TMK MARKETING, LLC, and GR BRICK, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> TWIN CITY FIRE INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 3:20-cv-13095 (FLW) (DEA) <br><br> OPINION |

Plaintiffs JRJ Hospitality, Inc. ("JRJ Hospitality"), KMK Hospitality, Inc. ("KMK Hospitality"), Eight Realty, LLC, TMK Marketing, LLC, and GR Brick, LLC ("GR Brick") (together, "Plaintiffs"), filed this action against Defendant Twin City Fire Insurance Company ("Defendant") seeking coverage for losses sustained as a result of the 2019 novel coronavirus ("COVID-19") pandemic. Presently before the Court is a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) filed by Defendant. For the reasons set forth below, Defendant's Motion is **GRANTED.**

**I.    BACKGROUND**

Plaintiffs own and operate a group of restaurants located in New Jersey. (Am. Compl. ¶¶ 11–15.) Specifically, JRJ Hospitality operates Nonna's Citi Cucina in Englishtown, New Jersey; KMK Hospitality operates Metropolitan Café in Freehold, New Jersey; and GR Brick operates Tre and Rosalita's Roadside Cantina in Brick, New Jersey. (*Id.*)

This action relates to two insurance policies Plaintiffs obtained from Defendant. JRJ

1

Hospitality obtained from Defendant Policy No. 13 SBA AA4745 for the period March 23, 2019 to March 23, 2020 (the "JRJ Hospitality Policy"). (*Id.* ¶ 49.) Pursuant to an endorsement effective March 23, 2019, JRJ Hospitality, Inc. d/b/a Nonna's City Cucina; KMK Hospitality, Inc d/b/a Metropolitan Café d/b/a Great Restaurants; DRJ Hospitality, LLC; and Eight Realty LLC were added as additional insureds to the JRJ Policy. (*Id.* ¶ 50.) TMK Marketing, LLC d/b/a Great Restaurants was added as an additional insured to the JRJ Hospitality Policy pursuant to an endorsement dated August 14, 2019. (*Id.* ¶ 50.) The JRJ Hospitality Policy was renewed for the policy period March 23, 2020 to March 23, 2021. (*Id.* ¶ 52.) GR Brick obtained from Defendant Policy No. 13 SBA NZ9707 for the periods December 8, 2019 to December 8, 2020 (the "GR Brick Policy"). (*Id.* ¶ 54.)

The relevant language of both the JRJ Hospitality Policy and the GR Brick Policy are the same. (*Id.* ¶ 58.) Both policies contain a Special Property Coverage Form, Form SS 00 07 07 05, that states "[i]n return for Plaintiffs' premium payments, Defendant provided business income, extra expense, extended business income, business income from dependent properties, civil authority, and [limited] virus coverage that indemnifies Plaintiff[s] for lost business income and expenses." (*Id.* ¶ 59.) The Policies' Civil Authority Coverage provision provides that

> (1) This insurance is extended to apply to the actual loss of Business Income you sustain when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises'.
>
> (2) The coverage for Business Income will begin 72 hours after the order of a civil authority and coverage will end at the earlier of: (a) When access is permitted to your 'scheduled premises'; or (b) 30 consecutive days after the order of the civil authority.

(*Id.* ¶ 68 (citing Special Property Coverage Form, ¶ A.5.q(1)-(2).)

Business Income is defined under the Policies as "[n]et income . . . that would have been

earned or incurred" and "[c]ontinuing normal operating expenses incurred, including payroll." (*Id.* ¶ 62 (citing Special Property Coverage Form, ¶A.5.o(4).)  The Extra Expense coverage provision provides that "[w]e will pay reasonable and necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or physical damage to property at the 'scheduled premises' . . . caused by or resulting from a Covered Cause of Loss." (*Id.* ¶ 65 (citing Special Property Coverage Form, ¶A.5.p(1).)  Extra Expense means expense incurred "(a) To avoid or minimize the suspension of business and to continue 'operations': (i) At the 'scheduled premises'; . . . (b) To minimize the suspension of business if you cannot continue 'operations.' (c) (i) To repair or replace any property." (*Id.* ¶ 66 (citing Special Property Coverage Form, ¶A.5.p(3).)

The Policies include an endorsement entitled "Limited Fungi, Bacteria or Virus Coverage" (the "Virus Exclusion").  The Virus Exclusion states

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
>
> (1) Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus.
>
> (2) But if "fungi", wet rot, dry rot, bacteria or virus results in a "specified cause of loss" to Covered Property, we will pay for the loss or damage caused by that "specified cause of loss".
>
> This exclusion does not apply:
>
> (1) When "fungi", wet or dry rot, bacteria or virus results from fire or lightning; or
>
> (2) To the extent that coverage is provided in the Additional Coverage – Limited Coverage for "Fungi", Wet Rot, Dry Rot, Bacteria and Virus with respect to loss or damage by a cause of loss other than fire or lightning.

> This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

(Mot., Ex. 1 at 154, § A.2.i. (Form SS 40 93 07 05 at 2); Mot., Ex. 3 at 137, § A.2.i. (Form SS 40 93 07 05 at 2.)  The Virus Exclusion, however, contains a limited exception which states that Defendant will provide coverage for loss or damage caused by "fungi", wet rot, dry rot, bacteria and virus

> when the "fungi", wet or dry rot, bacteria or virus is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.
>
> (1) A "specified cause of loss" other than fire or lightning;
>
> (2) Equipment Breakdown Accident occurs to Equipment Breakdown Property, if Equipment Breakdown applies to the affected premises.

(*Id.*)  Plaintiffs do not, however, claim that this limited exception to the Virus Exclusion applies here.

On March 9, 2020, New Jersey Governor Philip D. Murphy issued Executive Order 103 which declared a state of emergency and public health emergency in response to the COVID-19 pandemic.  (Am. Compl. ¶ 24.)  On March 16, 2020, Governor Murphy issued Executive Order 104, "restricting all restaurants and dining establishments to 'offering only food delivery and/or take out services.'"  (*Id.*)  Thereafter, on March 21, 2020, Governor Murphy issued Executive Order 107, a "Stay at Home Order," "mandating that all residents must remain at home absent essential travel."  (*Id.* ¶ 28.)  On April 11, 2020, Governor Murphy issued Executive Order 125, "limit[ing] occupancy in any restaurant continuing to provide food delivery and/or take out services to 10% of capacity, and mandated at least a distance of six feet between workers and customers, except at the moment of payment and/or exchange of goods."  (*Id.* ¶ 30.)  On June 2,

2020, Executive Order 150 was issued allowing, as of June 15, 2020, the "resumption of outdoor dining, only, but only under the strictest of standards, including social distancing requirements." (*Id.* ¶ 32.) Lastly, after a temporary pause on the resumption of indoor dining, Governor Murphy issued Executive Order 283 "which as of September 4, 2020, allowed the resumption of indoor dining 'with strict capacity limits and health and safety protocols." (*Id.* ¶ 36.) The Executive Order "limited 'the number of patrons in indoor areas to 25 percent of the food or beverage establishment's indoor capacity, excluding the food or beverage establishment's employees' and mandated that tables be 'six feet apart in all directions from any other table or seat.'" (*Id.*) As a result of the issuance of the Executive Orders, Plaintiffs allege that they have "experienced a dramatic drop in business income" and "incurred expenses in connection with modifications to and operations of their businesses in accordance with allowable standards and ensuring compliance with all local and state guidelines." (*Id.* ¶ 41.) Specifically, Plaintiffs claim they "have suffered a direct physical loss of, and damage to, their premises because they have been unable to use, or fully use, the properties for their intended purpose and/or otherwise maintain their business operations." (*Id.* ¶ 42.)

Plaintiffs further claim that, as a result of the Executive Orders, they were unable to continue operating as they had previously. Accordingly, Plaintiffs submitted a claim under both the JRJ Hospitality Policy and GR Brick policy "for business interruption and other losses." (*Id.* ¶¶ 74, 78.) On April 8, 2020, Defendant denied Plaintiffs' claim under the GR Brick Policy, citing the Virus Exclusion. (*Id.* ¶ 78.) Thereafter, on July 1, 2020, Defendant denied Plaintiffs' claim under the JRJ Hospitality Policy, again citing the Virus Exclusion. (*Id.* ¶ 74.) On April 8, 2020, Defendant denied Plaintiffs' claim under the GR Brick Policy also citing the Virus Exclusion. (*Id.* ¶ 78.) On September 23, 2020, Plaintiffs filed the present complaint, seeking a declaration that

5

Defendant is obligated to provide coverage for Plaintiffs' alleged losses and asserting claims of breach of contract and bad faith. Plaintiffs thereafter file an Amended Complaint on October 30, 2020. This motion followed.

## II. STANDARD OF REVIEW

### a. Rule 12(c) Standard

The difference between a motion to dismiss pursuant to Rule 12(b)(6) and a motion pursuant to Rule 12(c) is a matter of timing. Motions brought pursuant to Rule 12(b) must be filed before any responsive pleading. Fed. R. Civ. P. 12(b); *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991). A Rule 12(c) motion to dismiss is available after a responsive pleading has been filed. *Id.* at 428. Regardless of which rule is appropriate, the same standard applies. *Id.*; *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004) ("There is no material difference in the applicable legal standards"). Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.  The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted).  Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quotations omitted).  Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotations and brackets omitted).

### b. Interpretation of Insurance Contracts Under New Jersey Law

Under New Jersey law, the determination of "the proper coverage of an insurance contract is a question of law." *Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (citing *Atl. Mut. Ins. Co. v. Palisades Safety & ns. Ass'n*, 364 N.J. Super. 599, 604 (App. Div. 2003)).  "An

insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." *Flomerfelt v. Cardiello*, 202 N.J. 432, 441, (2010). However, because insurance policies are contracts of adhesion, they "are subject to special rules of interpretation," *Longobardi v. Chubb Ins. Co. of N.J.*, 121 N.J. 530, 537 (1990), and "courts must assume a particularly vigilant role in ensuring their conformity to public policy and principles of fairness." *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 175 (1992); *see Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 594 (2001) ("We give special scrutiny to insurance contracts because of the stark imbalance between insurance companies and insureds in their respective understanding of the terms and conditions of insurance policies."). In a dispute over the interpretation of an insurance contract, the "burden is on the insured to bring the claim within the basic terms of the policy." *Reliance Ins. Co. v. Armstrong World Indus., Inc.*, 292 N.J. Super. 365, 377 (App. Div. 1996). However, where, as here, "the insurance carrier claims the matter in dispute falls within exclusionary provisions of the policy, it bears the burden of establishing that claim." *Rosario ex rel. Rosario v. Haywood*, 351 N.J. Super 521, 530 (App. Div. 2002).

In New Jersey, the court's function in construing policies of insurance, as with any other contract, "is to search broadly for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes of the policies." *Royal Ins. Co. v. Rutgers Cas. Ins. Co*., 271 N.J. Super. 409, 416 (App. Div. 1994). In most cases, the best indication of the parties' reasonable expectations lies in the language of the insurance policy itself, *Moessner*, 121 F.3d at 903, and thus, ordinarily, "the words of an insurance policy are to be given their plain, ordinary meaning." *Zacarias*, 168 N.J. at 595. In that regard, "[w]here the express language of the policy is clear and unambiguous, 'the court is bound to enforce the policy as it is written.'" *Rosario*, 351 N.J. Super. at 530 (quoting *Royal Ins*., 271 N.J. Super. at 416); *Chubb*

8

*Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238 (2008) ("If the language is clear, that is the end of the inquiry."). This governing principle precludes courts from writing "'for the insured a better policy of insurance than the one purchased.'" *Gibson v. Callaghan*, 158 N.J. 662, 670 (1999) (citation omitted).

Additionally, in the context of an insurance policy, "[e]xclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" *Flomerfelt*, 202 N.J. at 441 (quoting *Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 95 (1997)). Because the burden is on the insurer to bring the case within an exclusion, *Chunmuang*, 151 N.J. at 95, "exclusions are ordinarily strictly construed against the insurer, and if there is more than one possible interpretation of the language, courts apply the meaning that supports coverage rather than the one that limits it." *Flomerfelt*, 202 N.J. at 442 (internal citation omitted). Nonetheless, "[i]f the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability." *Id.* (quoting *Longobardi*, 121 N.J. at 537). In that regard, courts cannot "disregard the 'clear import and intent' of a policy exclusion," *Am. Motorists Ins. Co. v. L–C–A Sales Co.*, 155 N.J. 29, 41 (1998) (citation omitted), and "[f]ar–fetched interpretations of a policy exclusion are insufficient to create an ambiguity requiring coverage." *Essex Ins. Co. v. New Jersey Pan–African Chamber of Commerce & Indus., Inc.*, No. A-1237-14T3, 2017 WL 4051726, at *3 (N.J. Super. Ct. App. Div. Sept. 14, 2017). "Rather, courts must evaluate whether, utilizing a 'fair interpretation' of the language, it is ambiguous." *Flomerfelt*, 202 N.J. at 442 (quoting *Stafford v. T.H.E. Ins. Co.*, 309 N.J. Super. 97, 105 (App. Div. 1998)).

## III. DISCUSSION

### a. Application of the Virus Exclusion

Defendant contends that Plaintiffs' claims are barred by the Policies' Virus Exclusion. In that regard, Defendant argues that the Virus Exclusion "explicitly applies to *all* coverages in the Special Property Coverage Form- including Business Income, Extended Business Income, Business Income from Dependent Properties and Civil Authority coverages." Plaintiffs, however, contend that the Virus Exclusion does not apply because the coverage applies to "conditions of the premises, not to protecting against a pandemic." (Pl. Opp., at 21.)

The Third Circuit has regularly "granted motions to dismiss in insurance cases when the plaintiff's allegations fall squarely within the policy's exclusions to coverage." *Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417, 426–27 (E.D. Pa. 2020); *see also Brewer v. U.S. Fire Ins. Co.,* 446 F. App'x 506, 510 (3d Cir. 2011) (dismissing complaint because the unambiguous policy exclusion applied as a matter of law); *N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, 499 F. Supp. 3d 74, 79–81 (D.N.J. 2020) (dismissing complaint based on language of virus exclusion). *Nautilus Ins. Co. v. Shawn Owens Inc.,* 316 F. Supp. 3d 873, 878 (E.D. Pa. 2018) (finding exclusion barred coverage under the insurance policy and granting insurer's Rule 12(c) motion). The Virus Exclusion at issue here states that Defendant "will not pay for loss or damage caused directly or indirectly by… [p]resence, growth, proliferation, spread or any activity of 'fungi', wet rot, dry rot, bacteria or virus." (Mot., Ex. 1 at 154, § A.2.i. (Form SS 40 93 07 05 at 2); Mot., Ex. 3 at 137, § A.2.i. (Form SS 40 93 07 05 at 2.) Additionally, the Virus Exclusion states that "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any

sequence to the loss" and that loss caused directly or indirectly by a virus is excluded.[1]  (*See id.*) Plaintiffs seek coverage for losses caused to their businesses by the COVID-19 pandemic and the ensuing Executive Orders issued in order to curb the spread of that virus.

Plaintiffs contend that their claims fall outside of the Virus Exclusion because the exclusion applies only "to conditions of the premises, not to protecting against a pandemic." (Pl. Opp., at 14.)  In support of their interpretation of the Virus Exclusion, Plaintiffs point to the terms "presence" and "growth," in addition to highlighting that the other excluded occurrences, such as "wet rot" and "dry rot," are related to damage or destruction of premises.[2]  (*Id.* at 14–16.) Plaintiffs' argument in this regard, however, has no textual support in the Policies.  This Virus Exclusion plainly provides that Defendant will not cover any loss caused by "[p]resence, growth,

---

[1]     Courts have consistently enforced Virus Exclusions similar to the one at issue here.  *See, e.g.*, *Sweetberry Holdings LLC v. Twin City Fire Ins. Co.*, No. 20-8200, 2021 WL 3030269, at *6 (D.N.J. July 19, 2021); *Arrowhead Health & Racquet Club v. Twin City Fire Ins. Co.*, No. 20-8968, 2021 WL 2525739, at *3–5 (D.N.J. June 21, 2021); *Eye Care Center of N.J., PA v. Twin City Fire Ins. Co.*, No. 20-5743, 2021 WL 457890, at *3 (D.N.J. Feb. 8, 2021); *Moody v. Hartford Fin. Grp., Inc.*, No. 20-2856, 2021 WL 135897, at *8 (E.D. Pa. Jan. 14, 2021) (finding that virus exclusion that excluded coverage for loss or damage caused by "[p]resence, growth, spread or any activity of 'fungi,' wet rot, dry rot, bacteria or virus" barred claim for losses caused by COVID-19 pandemic); *TAQ Willow Grove, LLC v. Twin City Fire Ins.*, No. 20-3863, 2021 WL 131555, at *7 (E.D. Pa. Jan. 14, 2021) (enforcing virus exclusion which provided "[w]e will not pay for loss or damage caused directly or indirectly by any of the following ... (1) Presence, growth, proliferation, spread or any activity of 'fungi', wet rot, dry rot, bacteria or virus").

[2]     In support of this argument, Plaintiffs rely on *Urogynecology Specialist of Florida LLC v. Sentinel Insurance Co. Ltd.*, 489 F. Supp. 3d 1297 (M.D. Fl. 2020).  There, the Middle District of Florida denied the insurer defendant's motion to dismiss because, it found, "several arguably ambiguous aspects of the Policy make determination of coverage inappropriate at this stage." *Id.* at 1302.  Notably, several documents key to interpreting the virus exclusion were not provided to the court and, accordingly, the court declined to make any decision on the merits of the plain language of the policy.  *Id.*  However, courts in this District have repeatedly declined to adopt the reasoning of *Urogynecology Specialist of Florida* at the dismissal stage.  *See Arrowhead Health & Racquet Club*, 2021 WL 2525739, at *5; *Stern & Eisenberg, P.C. v. Sentinel Ins. Co., Ltd.*, No. 20-11277, 2021 WL 1422860, at *4–5 (D.N.J. Apr. 14, 2021); *N&S Restaurant*, 499 F. Supp. 3d at 81.  Further, the parties here have provided the documents necessary for the Court to interpret the terms of the Policies.

proliferation, spread or any activity of . . . [a] *virus*." (Mot., Ex. 1 at 41, § A.3 (Form SS 00 07 07 05 at 2); Mot., Ex. 3 at 36, § A.3 (Form SS 00 07 07 05 at 2.)  There is no textual limitation that indicates the exclusion applies only when one of the listed occurrences is present at the covered properties.  Rather, the Virus Exclusion broadly applies to any loss caused by a virus.  To accept Plaintiffs' interpretation would require the Court to add language that does not appear in the Policy.³

Second, Plaintiffs attempt to save their claim by arguing that "[e]ven if this Court determines that the exclusion applies, coverage is not precluded because Governor Murphy's Closure Orders were the cause of Plaintiffs' business income losses." (Pl. Opp. at 29.)  In other words, Plaintiffs seek to invoke New Jersey's "Appleman Rule," which holds that "if an exclusion 'bars coverage for losses caused by a particular peril, the exclusion applies only if the excluded peril was the efficient proximate cause of the loss.'" *Zurich Am. Ins. Co. v. Keating Bldg. Corp.*, 513 F. Supp. 2d 55, 70 (D.N.J. 2007).  Thus, "[w]here a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and the final

---

³       Indeed, at least one court in this District rejected a similar argument. In *Eye Care Center*, the plaintiff's policy included a similar virus exclusion to the one at issue here.  2021 WL 457890, at *3.  The *Eye Care Center* plaintiff argued that the exclusion required that the virus be present at the property for the exclusion to apply.  *Id.*  The court, however, determined that "[t]here is not a sufficient textual basis for Eye Care's argument that the virus must be physically present."  *Id.*  Plaintiffs attempt to distinguish *Eye Care Center* by arguing that the court there relied on *N&S Restaurant* to support its decision in this regard and that case did not involve a similar virus exclusion.  Specifically, the virus exclusion in *N&S Restaurant* stated that the insurer would not pay for loss or damage caused by virus or bacteria, "which is any virus, bacterium or other microorganism, that induces or is capable of inducing physical distress, illness or disease."  *N&S Restaurant*, 499 F. Supp. 3d at 77.  Based on the language of the exclusion, the *N&S Restaurant* court found that the policy did not require "for the virus to have physically caused the loss, such as via contamination of the property."  *Id.*  However, because the virus exclusion in *N&S Restaurant* is phrased differently than the one at issue here and in *Eye Care Center*, Plaintiffs argue that *Eye Care Center* was wrongly decided. I disagree.  The *Eye Care Center* court's reasoning is based on the language of the policy at issue in that case.  The court's citation to *N&S Restaurant* to bolster its decision in that regard does not undermine its holding.

loss, produces the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss." *N.J. Transit Corp. v. Certain Underwriters at Lloyd's London*, 461 N.J. Super. 440, 460-61 (App. Div. 2019) (quoting *Auto Lenders Acceptance Co. v. Gentillini Ford, Inc.*, 181 N.J. 245, 257–58 (2004)). Conversely, a loss may also be covered where the covered cause "ends the sequence of events leading to the loss." *Flomerfelt*, 202 N.J. at 447. Ultimately, however, the pertinent question is not where in the sequence the alleged cause of loss occurred, but what was the predominant cause that produced the loss. *See Franklin Packaging Co. v. Cal. Union Ins. Co.*, 171 N.J. Super. 188, 191 (App. Div. 1979).

Here, each Plaintiff claims that it "lost the use of its business, its business properties, and lost substantial business income" because of the Executive Orders and not the virus. (Compl. ¶ 92.) However, the Virus Exclusion includes an anti-concurrent clause, which is "exclusionary language designed to avoid the 'efficient proximate cause doctrine.'" *N&S Restaurant*, 499 F. Supp. 3d at 80 (internal quotation marks omitted); *see also Garmany of Red Bank, Inc. v. Harleysville Ins. Co.*, No. 20-8676, 2021 WL 1040490, at *5 (D.N.J. Mar. 18, 2021). Such clauses "exclude coverage when a prescribed excluded peril, alongside a covered peril, either simultaneously or sequentially, causes damage to the insured" and are enforceable under New Jersey law. *Downs Ford, Inc. v. Zurich Am. Ins. Co.*, No. 20-08595, 2021 WL 1138141, at *6 (D.N.J. Mar. 25, 2021) (quoting *N.J. Transit Corp. v. Certain Underwriters at Lloyd's London*, 461 N.J. Super. 440, 461 (App. Div. 2019) (internal quotation marks omitted)); *see also N&S Restaurant*, 499 F. Supp. 3d at 80 (citing *Assurance Co. of Am., Inc. v. Jay-Mar, Inc.*, 38 F. Supp.2d 349, 353 (D.N.J. 1999)); *Lam Investment Research, LLC v. Pub. Serv. Mutual Ins. Co.*, No. 12-5576, 2016 WL 6634931, at *5 (D.N.J. Apr. 1, 2016). The inclusion of an anti-concurrent clause in the Virus Exclusion means that a policy "does not provide coverage for losses caused directly

or indirectly by a virus, regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *N&S Restaurant*, 499 F. Supp. 3d at 80. The Policies, here, specifically provide that loss or damage caused by a virus "is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Because the Executive Orders were issued by Governor Murphy in response to the COVID-19 virus and pandemic, the COVID-19 virus was a contributing cause of Plaintiffs' losses. As such, the Policies do not cover any claim for losses caused by the COVID-19 virus and the ensuing Executive Orders.

### b. The Bad Faith Claim

In *Pickett v. Lloyd's*, 131 N.J. 457, 481 (1993), the New Jersey Supreme Court enumerated two situations under which an insurance company can be held to have acted in bad faith in the context of a first party claim: (1) "denial of benefits" and (2) "processing delay." The Court reasoned that, like all contracts, an insurance contract contained a covenant of good faith and fair dealing in its performance and enforcement. *Id.* at 467.

Thus, the Court concluded that the insured should have a remedy when the insurer breaches its fiduciary duty to its insured by acting in bad faith. *Id*. To prove bad faith, "a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard or the lack of a reasonable basis for denying the claim." *Miglicio v. HCM Claim Mgmt. Corp.*, 288 N.J. Super. 331, 341 (Law Div. 1995). "While the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is reckless indifference to facts or to proofs submitted by the insured, neither negligence nor mistake is sufficient to show bad faith." *Id*. at 341–42; *Pickett,* 131 N.J. at 474. Rather, it must be demonstrated that the insurer's conduct is unreasonable and the insurer knows that the conduct is unreasonable, or that it recklessly disregards the fact that the conduct is unreasonable. *Miglicio*,

288 N.J. Super. at 342; *Pickett*, 131 N.J. at 474.

In the present matter, Plaintiffs assert a claim that Defendant acted with bad faith when it denied benefits set forth in Plaintiffs' contract with Defendant. (Am. Compl. ¶ 104.) However, as previously discussed, Plaintiffs' losses are barred by the Virus Exclusion. Consequently, because no coverage exists for Plaintiffs' claims, the bad faith claim fails.

## IV.  CONCLUSION

For the reasons set forth herein, Defendant's Motion for Judgment on the Pleadings is **GRANTED.** Plaintiffs' Amended Complaint is **DISMISSED WITH PREJUDICE**. As a matter of law, there is no additional discovery or amended pleadings that will change the court's reading of the plain language of the policy.

DATED: August 12, 2021                                                      /s/ Freda L. Wolfson
                                                                            Freda L. Wolfson
                                                                            U.S. Chief District Judge